UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT FIESTER, | Case No. 1:24-cv-00530-HBK |
| Plaintiff, | ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY[1] |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | (Doc. Nos. 12, 16) |
| Defendant. | |

Robert Fiester ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income and disability insurance benefits under the Social Security Act. (Doc. No. 1). The matter is currently before the undersigned on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 12, 16-17). For the reasons set forth more fully below, the Court affirms the Commissioner's decision.

**I.     JURISDICTION**

Plaintiff protectively filed for supplemental security income and disability insurance benefits on November 8, 2021, alleging a disability onset date of September 6, 2021. (AR 201-

---

[1] Both parties have consented to the jurisdiction of a magistrate judge, in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 10).

14). At the hearing, Plaintiff amended his alleged onset date to September 20, 2021. (AR 35). Benefits were denied initially (AR 54-89, 128-32) and upon reconsideration (AR 90-127, 140-46). Plaintiff appeared for a telephonic hearing before an administrative law judge ("ALJ") on June 7, 2023. (AR 31-53). Plaintiff testified at the hearing and was represented by counsel. (*Id*.). The ALJ denied benefits (AR 14-30) and the Appeals Council denied review (AR 1-6). The matter is before the Court under 42 U.S.C. § 1383(c)(3).

## II.    BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 56 years old at the time of the hearing. (AR 36). He has a college education. (AR 36, 241). He lives with his sister and mother. (AR 37). He has work history as a drug and alcohol abuse counselor, shelter monitor, and security guard. (AR 37-39, 48). Plaintiff testified he is unable to work because he becomes extremely fatigued due to his depression, cirrhosis of the liver, and sleep apnea. (AR 39-40). He reported general malaise and "wouldn't call [himself] very perky." (AR 40). Plaintiff testified that he has pain in his legs and can only be "on his feet" for half an hour before he has to sit down for half an hour. (AR 41). He can lift around ten pounds, sometimes has trouble with memory, and does not have trouble getting along with people. (AR 42). Plaintiff reported he cannot do his previous work as a counselor because he could not "concentrate constantly," and he could not do his previous work as a security guard because of the physical demands. (AR 42-43).

## III.    STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence e" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial

2

evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV.  SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner must also

4

consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 20, 2021, the amended alleged onset date. (AR 19). At step two, the ALJ found that Plaintiff has the following severe impairments: chronic liver disease and cirrhosis, obstructive sleep apnea, atrial fibrillation, and obesity. (AR 19). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 21). The ALJ then found that Plaintiff has the RFC to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except frequently climb ramps or stairs; occasionally climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, or crawl; must avoid concentrated exposure to hazards such as unprotected heights, moving machinery, and commercial driving.

(AR 22). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a drug and alcohol abuse counselor. (AR 25). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from September 20, 2021, through the date of the decision. (AR 26).

## VI. ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him

5

supplemental security income benefits under Title XVI of the Social Security Act and disability insurance benefits under Title II of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ's RFC determination is supported by substantial evidence in light of the ALJ's consideration of the medical opinion evidence; and

2. Whether the ALJ properly considered Plaintiff's symptom claims, including his claims of disabling fatigue.

(Doc. No. 12 at 3-10).

## VII.   DISCUSSION

### A. RFC/Medical Opinions

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. (*Id.*) (RFC determination will be affirmed if supported by substantial evidence). However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ ... to determine residual functional capacity.").

Plaintiff argues the ALJ erred in assessing the RFC because she failed to properly evaluate the medical opinion of Priyanga Jayakumar, M.D. (Doc. No. 12 at 3-6). For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844,

6

at 5867-68; see 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b). The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and

7

convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* at 792. This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2))

In May 2022, Plaintiff's primary care provider Priyanga Jayakumar, M.D. completed a physical residual functional capacity questionnaire and opined that Plaintiff could occasionally lift and/or carry up to 10 pounds; stand and/or walk about 2 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; change positions at will from standing or walking; take unscheduled breaks during an 8-hour workday for 10-20 minutes every 3-4 hours as needed; be absent from work about twice a month; have difficulty pushing/pulling heavy objects in the upper and lower extremities; occasionally bend, balance, and kneel; never climb, crouch, or crawl; frequently reach, handle, and finger; and avoid extreme temperatures, loud noises, and working around heavy machinery and heights. (AR 626-28). The ALJ found Dr. Jayakumar's opinion was not persuasive. (AR 25).

First, as to consistency under the regulations, the ALJ found the opinion was

> not consistent with the objective evidence of record. The record does not support excessive breaks or absences, as records show liver cirrhosis is well controlled, as ascites are resolved to the point that he was taken [off] Aldactone. Further, this opinion is dated around the time the claimant was started on a BiPAP for obstructive sleep apnea, which had been untreated for some time, likely contributing greatly to his fatigue and weakness. It is likely the symptoms will improve with this treatment.

(AR 25). Plaintiff argues that the ALJ did not provide sufficient explanation for his "apparent conclusion that Plaintiff's need for excessive breaks and absences was only due to his liver condition," and "wholly ignores the fact that Plaintiff's fatigue, caused by his obstructive sleep apnea as well as his atrial fibrillation, would be a logical rationale for Dr. Jayakumar's opinion." (Doc. No. 12 at 5). However, the Ninth Circuit does "not require ALJs to perform a line-by-line

8

exegesis of the claimant's testimony, nor do they require ALJs to draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020); *Smartt v. Kijakazi*, 53 F. 4th 489, 499 (9th Cir. 2022) ("The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince."). Moreover, Plaintiff fails to cite any medical evidence of record, or notation in Dr. Jayakumar's opinion or treatment notes, explicitly opining that Plaintiff's fatigue was caused by his diagnosed sleep apnea or atrial fibrillation. Thus, regardless of the scope of Plaintiff's claimed impairments, it was reasonable for the ALJ to find Dr. Jayakumar's opined limitations regarding Plaintiff's attendance were inconsistent with evidence from other medical sources noting the controlled nature of his liver cirrhosis with ascites, which was identified as a primary diagnosis in Dr. Jayakumar's opinion along with clinical findings of abdominal distension, bilateral pedal edema, venous stasis dermatitis, and obesity. *See* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits."); *Munoz v. Comm'r of Soc. Sec.*, 2025 WL 942907, at *7 (E.D. Cal. Mar. 28, 2025) (finding ALJ provided sufficient evidence to support finding that impairments were inconsistent with the longitudinal record showing improvement and normal examination findings). Finally, the ALJ generally found Dr. Jayakumar's opinion was inconsistent with the objective medical evidence of record, which as previously set out in the ALJ decision included improved gait and mobility after physical therapy; well-controlled ascites with medication that later resolved on imaging; normal examinations of abdomen and lungs clear to auscultation; no indication of hepatic encephalopathy; no suspicious lesions on June 2022 CT scan; and well-controlled atrial fibrillation. (AR 23-24, 323, 644-47, 704-07, 717-20, 727-28).

Plaintiff additionally argues that the ALJ's finding that Plaintiff's obstructive sleep apnea was "untreated for some time, likely contributing greatly to his fatigue and weakness" and further speculation that this it "is likely that these symptoms will improve with this treatment" is unsupported by the record and "cannot possibly be found to provide substantial evidence to support finding Dr. Jayakumar's opinion unpersuasive." (Doc. No. 12 at 6). While a failure to

seek treatment is arguably relevant to the consistency analysis under the new regulations (*See Sy S. v. Comm'r Soc. Sec. Admin.*, 2024 WL 2292447, at *5 (D. Or. May 21, 2024) ("lack of contemporaneous treatment is another valid reason to discount a medical opinion.")), the Court agrees that the ALJ's speculation that Plaintiff's symptoms "will improve" with future treatment does not support discounting Dr. Jayakumar's opinion as inconsistent with the existing evidence from medical and nonmedical sources in the record. *Ramos v. Comm'r of Soc. Sec.*, 2019 WL 4917637, at *3 (E.D. Cal. Oct. 4, 2019) ("A hope that Plaintiff's condition could improve in the future does not provide a legitimate reason to discount [a medical provider's] opinion when there is no evidence Plaintiff's [impairment] did improve."); *Stephens v. Colvin*, 2015 WL 3430586, at *9 (N.D. Cal. May 28, 2015) ("As to the fact that plaintiff's symptoms could improve in the future, again, that does not bear on the question of whether plaintiff was under disability from the date of onset to the time of [plaintiff's] evaluation, as a logical matter."). However, any error is harmless because the ALJ offers additional reasons, supported by substantial evidence, to find Dr. Jayakumar's opinion was not consistent with the overall record. *See Carmickle*, 533 F.3d at 1162-63 (error in considering one of several reasons given in support of ALJ's finding was harmless because the remaining reasons and ultimate determination were supported by substantial evidence). Based on the foregoing, despite evidence in the record that could be considered favorable to Plaintiff, it was reasonable for the ALJ to conclude the limitations assessed by Dr. Jayakumar regarding absences and unscheduled breaks was not consistent with the evidence from other medical sources in the longitudinal treatment record. *Burch*, 400 F.3d at 679; *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence).

Second, as to supportability under the regulations, the ALJ found Dr. Jayakumar's opined limitations on lifting only 10 pounds and standing/walking only 2 hours was inconsistent with his own examinations, "which are normal other than morbid obesity and, occasional mild bilateral pedal edema and/or venous stasis dermatitis, which are not issues that would cause the extreme limitations noted, and there is no basis for the noted manipulative limitations or a need to avoid loud noises or temperature extremes." (AR 25). Plaintiff generally argues, without citation to legal authority, that this finding "must fail" because Plaintiff's impairments of atrial fibrillation,

obstructive sleep apnea, and liver condition "are not of a nature to lend themselves to external observations." (Doc. No. 12 at 6). Nevertheless, under the revised regulations, "the more relevant the objective medical evidence and supporting explanations *presented by a medical source* are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive" the opinion will be. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Here, in support of this finding, the ALJ cited consistently normal examination findings by Dr. Jayakumar aside from occasional mild bilateral pedal edema and/or venous stasis dermatitis. (AR 25 (citing AR 564, 569, 575, 613, 719, 727, 746, 751)). Thus, regardless of evidence that could be considered more favorable to Plaintiff, it was reasonable for the ALJ to find Dr. Jayakumar's opined lifting, walking, standing, manipulative, and environmental limitations are not supported by her own objective examination findings.

After viewing the ALJ's reasoning in light of the record as a whole, the ALJ's finding that Dr. Jayakumar's opinion was not persuasive is supported by substantial evidence after proper consideration of the supportability and consistency factors. The Court finds no error in the ALJ's consideration of the medical opinion evidence and formulation of the RFC. *See Bayliss*, 427 F.3d at 1217.

### B. Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). The ALJ first must determine whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id*. (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d

1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22). Plaintiff argues the ALJ failed to offer "any reason" to reject Plaintiff's subjective complaints, and therefore failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations. (Doc. No. 12 at 8-10).

As an initial matter, Plaintiff makes a separate argument that the ALJ failed to properly analyze Plaintiff's symptom claim of fatigue and the "impact it would have on his [RFC]." (*Id*. at 7-8). However, a plain reading of the ALJ's decision indicates he specifically considered Plaintiff's fatigue in assessing the RFC after evaluating his symptom claims and, as discussed in relevant part above, the medical opinion evidence. (*See* AR 22-25). Thus, the Court agrees with Defendant that Plaintiff's claimed impairment of fatigue is properly considered along with his other symptom claims. (Doc. No. 16 at 4).

In his opening brief, Plaintiff's only argument is that the ALJ failed to provide an analysis of how Plaintiff's fatigue impacted his ability to work, and relied entirely on a summary of the medical evidence which "is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible." (Doc. No. 12 at 9 (citing *Lambert*, 980 F.3d at 1278). This argument is unavailing. The ALJ gave multiple specific reasons for discounting

Plaintiff's symptom claims, including explicitly considering his testimony regarding fatigue. The Court may decline to consider these reasons as they were not raised with specificity in Plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n.2; *see also Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court will briefly review the reasons given by the ALJ to discount Plaintiff's symptom claims.

First, the ALJ found that "although [Plaintiff] alleges fatigue, he has had untreated obstructive sleep apnea and only recently followed up with Sleep Medicine and started a BiPAP in April 2023, and there are no updated records." (AR 22-23). As noted by the ALJ, Plaintiff was referred to Sleep Medicine in September 2021, a sleep study was ordered when he saw Sleep Medicine over a year later in November 2022; and after a February 2023 sleep study Plaintiff was started on a treatment for severe obstructive sleep apnea in April 2023. (AR 23-24, 374, 698-700, 710). The record contains no further "updated records" regarding sleep apnea as of the hearing date. (Doc. No. 16 at 5-6). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Second, the ALJ found Plaintiff "improved significantly after his hospitalization in September 2021, at which time, he was restarted on medications and stopped drinking alcohol, and he was subsequently taken off Aldactone, given resolution of ascites. He has had some relapses on alcohol since that time, but his liver disease has remained well controlled. AFib appears to be well-treated with aspirin and metoprolol." (AR 23). In support of this finding, the ALJ set out medical evidence documenting effectiveness of treatment across the relevant adjudicatory period, including Plaintiff's own reports that he was doing well. (AR 23-24, 323, 644, 704-07, 720, 728, 747). The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. *See Warre*, 439 F.3d at 1006 (conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints).

Third, the ALJ found Plaintiff's hearing testimony regarding his restriction in activities was greater than his reports in the medical record that he walks on most days, does chores around the house, climbs stairs to get to his living area, lifts 50 pounds a short distance, drives around the neighborhood, and waters his yard. (AR 23, 77, 233-35). In his reply, Plaintiff generally argues, without citation to the record, that the ALJ failed to "even note which activities would equate to the ability to sustain work on a 'regular and continuing basis' for eight hours a day, five days per week." (Doc. No. 17 at 4-5). However, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal citations omitted), *superseded on other grounds by* 20 C.F.R. § 416.920(a). Thus, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's reported activities were inconsistent with the severity of her allegations of entirely disabling limitations including fatigue and standing for only 30 minutes at a time. (AR 39-41). *Molina*, 674 F.3d at 1113; *see also Tommasetti,* 533 F.3d at 1040 (ALJ may draw inferences logically flowing from evidence); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). This was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

Finally, to the extent Plaintiff argues the ALJ erred "in failing to go beyond mere inconsistencies with the objective medical evidence," this argument is misplaced. (Doc. No. 17 at 3). The ALJ may not discredit a claimant's testimony and deny benefits *solely* because the degree of impairment alleged is not supported by objective medical evidence. (Doc. No. 15 at 13 (citing *Burch*, 400 F.3d at 681)). However, medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 404.1529(c)(2). Here, as discussed above, the ALJ gave additional reasons, supported by substantial evidence, for discounting Plaintiff's symptom claims. Moreover, the ALJ set out medical evidence documenting normal objective testing and unremarkable physical examinations across the relevant adjudicatory period in contradiction of

Plaintiff's claims of disabling impairments. (AR 23-25, 564, 569, 575, 613, 644, 704, 719, 727, 746, 751). Thus, to the extent the ALJ relied on the lack of corroboration of Plaintiff's claimed limitations by the objective evidence, this was a clear and convincing reason for the ALJ to discount Plaintiff's symptom claims.

The Court concludes that the ALJ provided clear, convincing, and largely unchallenged reasons for rejecting Plaintiff's symptom claims including fatigue.

## VIII.   CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ properly considered Plaintiff's symptom claims and the medical opinion evidence, and properly assessed the RFC. After review, the Court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly, it is **ORDERED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 12) is DENIED.
2. Defendant's Cross-Motion for Summary Judgment (Doc. No. 16) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED for the reasons set forth above.
3. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any pending motions/deadlines, and close this case.

Dated:   April 30, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

15